Slip Op. 19-117

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AMERICAN CAST IRON PIPE COMPANY, ET AL.,**<br><br>                    Plaintiff<br><br>          v.<br><br>**UNITED STATES,**<br><br>                    Defendant. | **Before: Jane A. Restani, Judge**<br><br>**Court No. 19-00083** |

## OPINION

Dated: September 4, 2019

[Plaintiff's motion for an injunction of liquidation is granted]

    Timothy C. Brightbill, Tessa V. Capeloto, Laura El-Sabaawi, Elizabeth S. Lee, Adam M. Teslik, and Maureen E. Thorson,Wiley Rein, LLP, of Washington, D.C., for Plaintiffs, American Cast Iron Pipe Company, Berg Steel Pipe Corp., Berg Spiral Pipe Corp., Dura-Bond Industries, and Stupp Corporation, individually and as members of the American Line Pipe Producers Association; Greens Bayou Pipe Mill, LP; JSW Steel (USA) Inc.; Skyline Steel; Trinity Products LLC; and Welspun Tubular LLC.

    Eric J. Singley, Jeanne E. Davidson, Joseph H. Hunt, and Patricia M. McCarthy, International Trade Field Office, U.S. Department of Justice, of New York, NY, for defendant. Of counsel was Brendan S. Saslow, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

    Restani, Judge: American Cast Iron Pipe Company, Berg Steel Pipe Corp., Berg Spiral Pipe Corp., Dura-Bond Industries, and Stupp Corporation, individually and as members of the American Line Pipe Producers Association; Greens Bayou Pipe Mill, LP; JSW Steel (USA) Inc.; Skyline Steel; Trinity Products LLC; and Welspun Tubular LLC (collectively, "Plaintiff")[1]

---

[1] Plaintiff is an interested party as it was the petitioner in the underlying antidumping duty investigation and has standing to bring this claim. See 28 U.S.C. § 2631(c) (2012); 19 U.S.C.

brought an action contesting the U.S. Department of Commerce's ("Commerce") final determination in an antidumping duty investigation on large diameter welded pipe ("welded pipe") from the Republic of Korea ("Korea"). See Complaint, ECF No. 8 (June 28, 2019) ("Compl."); Amended Final Determination, 84 Fed. Reg. 18,767 (Dep't Commerce May 2, 2019) ("Final Determination"). Before the court is Plaintiff's motion for a preliminary injunction,[2] asking the court to enjoin the government from causing or permitting liquidation of certain unliquidated entries of welded pipe from Korea that are subject to the Final Determination.[3] Mot. Prelim. Inj., ECF No. 10 (July 29, 2019) ("Pl. Mot."). The government opposes the motion. Def.'s Resp. to Pl.'s Mot. Prelim. Inj., ECF No. 13 (Aug. 19, 2019) ("Def. Resp.").

## BACKGROUND

On January 17, 2018, Plaintiff filed a petition with the International Trade Commission and Commerce alleging, in relevant part, that domestic industry was materially injured or threatened with material injury by the dumping of welded pipe from Korea into the U.S. market. See Large Diameter Welded Pipe from Canada, Greece, India, the People's Republic of China,

---

§ 1516a(d); § 1677(9)(C) & (E).

[2] Although Plaintiff and the government continually refer to this motion as a preliminary injunction, the motion is brought pursuant to 19 U.S.C. §§ 1516a(c),(e) and will permanently enjoin liquidation not in accordance with the final decision of this court pursuant to a litigant's statutory rights. Thus, the court refers to this measure as a "statutory injunction" in order to distinguish from a preliminary injunction, which is granted under the court's equitable powers rather than by statute.

[3] Specifically, Plaintiff asks that subject welded pipe that "were entered, or withdrawn from warehouse for consumption, on or after August 27, 2018 up to and including February 22, 2019, and on or after April 19, 2019 up to and including April 30, 2020," and that "were produced or exported by Hyundai RB Co., Ltd., SeAH Steel Corporation, Samkang M&T Co., Ltd, and any others subject to the "all-others rate," be enjoined from liquidation pending the outcome of this case. Pl. Mot. at 2.

<u>the Republic of Korea, and the Republic of Turkey: Petitions for the Imposition of Antidumping and Countervailing Duties</u>, POI: 1/1/2017–12/31/2017, A-580-897 (Jan. 17, 2018) ("Petition"). During the investigation, Plaintiff submitted information claiming that global steel overcapacity and a combination of distortive market practices drove down the price of welded pipe imports. Plaintiff urged Commerce to adjust for this particular market situation by using its proposed regression analysis, but Commerce ultimately did not employ that analysis in arriving at the final dumping margins. See <u>Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Large Diameter Welded Pipe from the Republic of Korea</u>, POI: 1/1/2017–12/31/2017, A-580-897, at 15–18 (Dep't Commerce Feb. 19, 2019).

In its complaint, Plaintiff contends that Commerce's adjustment methodology was "insufficient to account for the particular market situation in Korea that distorted the [cost of production] for [welded pipe] and, accordingly, was unsupported by substantial evidence and not in accordance with law. Compl., ECF No. 8 at ¶ 16 (June 28, 2019). Further, Plaintiff alleges that "Commerce's margin calculation for respondents Hyundai RB and SeAH in the investigation including the 'all others' dumping margin," was unsupported by substantial evidence and not in accordance with law. <u>Id.</u> at ¶ 18.

## JURISDICTION

The court has jurisdiction over the underlying action pursuant to 28 U.S.C. § 1581(c) and has the authority to grant injunctive relief in this case under 19 U.S.C. § 1516a(c)(2).

## DISCUSSION

The purpose of a statutory injunction is to preserve the status quo during judicial proceedings so that relief may be provided in accordance with the final litigation results.

It is often stated that in order to succeed on a motion for a statutory injunction a moving party must demonstrate "(1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the petitioner." Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983). "No one factor, taken individually is necessarily dispositive." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). But where the issue is preserving the court's jurisdiction, the first factor normally controls. See Zenith, 710 F.3d at 810; Husteel, 34 F. Supp. 3d at 1359–60.

I.  **Immediate and Irreparable Injury**

During an investigation into dumping, if Commerce preliminarily determines that a product is being sold at less than fair value ("LTFV"), it suspends liquidation on all covered merchandise pending a final determination. 19 U.S.C. § 1673b(d)(2). If a final determination similarly finds sales at LTFV and the International Trade Commission finds material injury or threat of material injury caused by these sales, then an antidumping duty order will issue. 19 U.S.C. § 1673d(c)(4)(A). After the final determination, Commerce instructs Customs to assess antidumping duties. See 19 U.S.C. § 1673e(a)(1). Commerce, however, will not liquidate until at least a year has passed from the publishing date of the order to allow for an interested party to request a periodic administrative review. See 19 U.S.C. § 1675(a)(1); see also OKI Elec. Indus. Co. v. United States, 669 F.Supp. 480, 483 (CIT 1987).

The amended final affirmative determination and antidumping duty order in this case stated that Commerce would direct Customs to reinstitute suspension of liquidation on subject merchandise and would "upon further instruction by Commerce pursuant to section 736(a)(1) of

the Act, [assess] antidumping duties for each entry." <u>Large Diameter Welded Pipe from the Republic of Korea: Amended Final Affirmative Antidumping Determination and Antidumping Duty Order</u>, 84 Fed. Reg. 18,767, 18,768 (Dep't Commerce May 2, 2019) ("Order"). As indicated and as Plaintiff acknowledges, however, liquidation instructions will not be issued until at least one year after the date of the Final Determination. Pl. Mot. at 4.

Plaintiff contends that should liquidation occur, it will face irreparable injury. Pl. Mot. at 3–5. The government responds that because liquidation of the relevant entries is currently administratively suspended, and liquidation is not imminent, Plaintiff faces no immediate harm of injury. Def. Mot. at 5–8. Additionally, the government argues that Plaintiff could request an administrative review to ensure liquidation is suspended until review is complete. Def. Resp. at 5. The government cites <u>Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States</u>, No. 19-00122, 2019 WL 3406919 (CIT 2019), for the proposition that a domestic producer is not entitled to a statutory injunction in this instance. Def. Resp. at 6–7.

The threat of injury in this case may not be "imminent in the same sense it is following an administrative review." <u>Husteel Co., Ltd. v. United States</u>, 34 F. Supp. 3d 1355, 1360 (CIT 2014) (quotations omitted). But the court has previously held that because an injunction "likely will be needed at some point" in these types of cases and that Commerce does not necessarily notify interested parties when liquidation instructions are issued, delaying an injunction "likely will invite trouble." <u>Id.</u> at 1361–62.

The government's argument that an affected party may bring an action during the first administrative review in order to ensure continued suspension of liquidation is unavailing. There are issues unique to the investigation phase of unfair trade proceedings that would be improper to

challenge during an administrative review and requesting a review simply to get an injunction pending the outcome of a case would be unduly wasteful not just for private parties, but for Commerce as well, should an administrative review not otherwise be required. Further, 19 U.S.C. § 1516a(c)(2), allowing for injunctive relief, applies to both investigations and administrative reviews, i.e. all of the determinations listed in 19 U.S.C. § 1516a(a)(2). We can assume that Commerce intended the parties to be able to obtain the remedies provided by statute without limitation to a subset of the proceedings referenced.

Further, since 1984 administrative reviews have not been mandatory and if one is not requested Commerce will, "without additional notice" to interested parties, instruct Commerce to liquidate the entries at the rates noted in the Order. See 19 U.S.C. § 1675(a); 19 C.F.R. §§ 351.213(b); 351.212(c); see also OKI Elec., 669 F. Supp at 629.[4] In this situation, assuming it was even aware of the lack of requests, Plaintiff would be under enormous time pressure to obtain an injunction at that point, which might not be accepted by the court. As the court in Husteel noted, the U.S. Court of International Trade Rule 56.2 could be interpreted to prevent a party from later obtaining a statutory injunction when liquidation is truly imminent as "[a]ny motion for a statutory injunction to enjoin the liquidation of entries that are the subject of the action must be filed by a party to the action within 30 days after service of the complaint, or at such later time, for good cause shown." USCIT R. 56.2(a); see also Husteel, 34 F. Supp. 3d at 1361. Determining good cause simply invites litigation. The court refuses to create the potential for such a situation.

---

[4] See discussion in Husteel, of Commerce's 15-day policy for liquidation instructions. 34 F. Supp. 3d at 1361.

Eventual harm here is clear. Liquidation would permanently deprive Plaintiff of its ability to challenge the rate with regard to affected entries. See Zenith, 710 F.3d at 810; Husteel, 34 F. Supp. 3d at 1359. There is no statutory provision allowing for the recovery post-liquidation of duties Commerce directs Customs to impose, even if that liquidation rate is later found incorrect. Zenith, 710 F.3d at 810; see also Cemex, S.A. v. United States, 384 F.3d 1314, 1323 n.9 (noting the absence of a statutory remedy for domestic producers in the case of improper liquidation). Although an administrative suspension is currently in place, mistakes can occur. In the case of mistaken liquidation by Customs, domestic producers do not have the statutory right of protest afforded to importers. See Cemex, 384 F.3d at 1323; FMC Corp., 3 F.3d at 430–31; Husteel 34 F. Supp at 1364; 19 U.S.C. § 1514(c)(2) (providing for protest by importers et al., but not domestic industry parties). Accordingly, domestic producers appear to have no statutory recourse in that situation and would lose the ability to obtain any meaningful relief, barring voluntary action by Customs. See Husteel, 34 F. Supp. 3d at 1364 (in this situation "domestic producers have a stronger interest in having an injunction granted, as they otherwise do not have the same protections as importers."); see also 19 U.S.C. § 1514(c)(2). This potential loss of any statutory relief is irreparable harm that is prevented by issuance of a statutory injunction enjoining liquidation. See Husteel, 34 F. Supp. 3d at 1364 (noting that a court retains jurisdiction in the event that Customs liquidates in contravention of a court-ordered injunction).

Although liquidation of relevant entries is not slated to occur immediately, given the irreparable harm that would result to Plaintiff should liquidation occur, and the possibility that an

injunction will be necessary at some point in this litigation, the court finds that this factor strongly weighs in favor of granting the injunction.[5]

### II.   Likelihood of Success on the Merits

The "greater the potential harm to the Plaintiff, the lesser the burden on Plaintiffs to make the required showing of likelihood of success on the merits." Belgium v. United States, 452 F.3d 1289 (Fed. Cir. 2006). Nonetheless, the Plaintiff must, at minimum, demonstrate "a fair chance of success on the merits." Qingdao Taifa Group Co., Ltd. v. United States, 581 F.3d 1375, 1381 (Fed. Cir. 2009) (quotations omitted).

Plaintiff contends that when irreparable harm is firmly established, that all Plaintiff must do is raise a question as to whether Commerce's Final Determination is unsupported by substantial evidence of otherwise not in accordance with law. Pl. Mot. at 6–7. The government argues that there is no chance of irreparable harm here and that plaintiff has failed to provide any support for the notion that they are likely to succeed on the merits. Def. Resp. at 9–10.

As indicated, in the face of irreparable harm, Plaintiff's burden to show likelihood of success on the merits is lessened. See Qingdao, 581 F.3d at 1378–79. In this case, while the Plaintiff has failed to provide support for its claim that it will ultimately succeed, the government has failed to provide any support for the notion that Plaintiff's claims are meritless. Because

---

[5] The government's reliance on Comm. Overseeing Action for Lumber is misplaced. No. 19-00122, 2019 WL 3406919 (CIT 2019). In that case, the Plaintiff was, at least in part, responsible for the potential liquidation of importer entries because Plaintiff had withdrawn a request for an administrative review that would have suspended liquidation pending the outcome of that review. Id. at *6. Here, Plaintiff has not similarly contributed to the precarious circumstances in which it is found. Further, the court in that case also did not consider some of the concerns noted above that could result should an injunction be denied. Motions to grant injunctions at the investigation stage have had various outcomes. See e.g., Perry Chemical Corp. v. United States, 375 F. Supp. 3d 1324, 1336 n.13 (CIT 2019) (collecting cases that have granted and denied injunctions).

neither party has discussed the merits of the case, the court will assume that this is a normal unfair trade case in which there are close, difficult issues that may be resolved in either party's favor. See Compl. at ¶¶ 15–18 (Plaintiff contends that Commerce insufficiently accounted for the particular market situation in Korea and that Commerce's dumping margin calculation for two respondents was unsupported by substantial evidence and otherwise not in accordance with law).

### III. Public Interest

The public interest is best served by the accurate assessment of duties. See SKF USA Inc. v. United States, 316 F. Supp. 2d 1322, 1329 (CIT 2004); see also Zenith Radio Corp. v. United States, 505 F. Supp. 216, 220 (CIT 1980). Further, granting an injunction in this case promotes judicial efficiency by obviating a need to revisit this issue later in the litigation under time constraints. An injunction may also avoid the necessity of an administrative review. See OKI Elec., 669 F. Supp at 486.

### IV. Balance of the Equities

As this court has said on several occasions, suspension of liquidation is at most an inconvenience to the government. See SKF USA Inc. v. United States, 316 F. Supp. 2d 1322, 1328 (CIT 2004); OKI Elec. Indus., 669 F. Supp. at 486 (CIT 1987); see also Timken Co. v. United States, 569 F. Supp. 65, 71 (CIT 1983). Equities do not favor the government as it will ultimately collect the full amount owed with interest and in the meantime will collect cash deposits at the rate currently set by the Final Determination. See 19 U.S.C. § 1677g(a).

### CONCLUSION

The court concludes that Plaintiff has met its burden to warrant an issuance of an injunction. Taken together, three of the four factors support granting Plaintiff's injunction. There is no harm in granting a statutory injunction to ensure that remedies remain available throughout

the pendency of this case, and there is serious potential for irreparable harm if the court does not grant the motion. Accordingly, Plaintiff's motion for a statutory injunction is granted.

An order will issue accordingly.

/s/ Jane A. Restani  
Jane A. Restani, Judge

Dated: September 4, 2019  
       New York, New York